UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| DAVID DOUGLAS MOELLER,<br><br>Petitioner,<br><br>v.<br><br>MARGARET GILBERT,<br><br>Respondent. | CASE NO. C13-5337 RJB-JRC<br><br>REPORT AND RECOMMENDATION<br><br>NOTED FOR:<br>SEPTEMBER 20, 2013 |

The District Court has referred this petition for a writ of habeas corpus to United States Magistrate Judge, J. Richard Creatura. The Court's authority for the referral is 28 U.S.C. § 636(b)(1)(A) and (B), and local Magistrate Judge Rules MJR3 and MJR4. Petitioner seeks relief from a state conviction. Petitioner filed the petition pursuant to 28 U.S.C. § 2254.

Respondent argues that five of the six grounds for relief that petitioner raises are procedurally barred and that the remaining ground for relief does not warrant relief. The Court has examined the motion for discretionary review that petitioner filed in the Washington State Supreme Court (ECF No. 17, Exhibit 11).  The Court agrees with respondent. Petitioner did not present all of his six grounds for review in the motion for discretionary review that he filed with the Washington Supreme Court. Further, in state court petitioner presented several of his grounds for relief as state claims (ECF No. 17, Exhibit 11). All but one of petitioner's grounds are procedurally barred. Petitioner's remaining ground for relief regarding the confrontation clause

does not warrant relief as the decision of the state courts does not violate clearly established federal law because petitioner was able to cross examine the witness and place testimony of her possible bias before the jury (ECF No. 17, Exhibit 2).

## BASIS FOR CUSTODY

In September of 2009, a Pierce County jury found petitioner guilty of rape in the first degree, assault in the second degree and unlawful imprisonment. On October 23, 2009, the trial court sentenced petitioner to an indeterminate sentence of one hundred-forty months to life (ECF No. 17, Exhibit 1). Petitioner is currently in custody serving that sentence.

## FACTS

The Washington State Court of Appeals summarized the facts surrounding the crimes as follows:

> Deborah Stegner and David Moeller began dating in May 2008. Several months later, they moved in together in a Lakewood, Washington apartment. On Friday, November 14, 2008, apartment management gave the couple a three-day notice to pay or vacate. When Stegner received the notice that day, she began packing. That same evening, Moeller "backhanded" Stegner in the head, causing a black eye.
>
> On November 15, Moeller hit Stegner in the face and strangled her. While Moeller had his arm around her neck, Stegner believed she would die. Moeller later demanded sex, stating, "Bitch, just go spread your legs." 4 Report of Proceedings (RP) (Sept. 9, 2009) at 53. To avoid further physical abuse, Stegner submitted to vaginal intercourse.
>
> On November 16, "[i]t was, basically, the same events, being hit, being strangled, having sex." 4 RP (Sept. 9, 2008) at 54-55. Moeller also ordered Stegner to douche. She believed Moeller ordered this act to eliminate evidence. She complied with a "half-hearted effort" because she did not want to eliminate the evidence. 4 RP (Sept. 9, 2009) at 55. Stegner wanted to leave, but the apartment's small size allowed Moeller to keep her in sight and prevent her from leaving.
>
> On November 17, Stegner woke up and saw a basket, a stack of boxes, and a piece of furniture stacked in front of the door. She could not escape without "making a bunch of noise" to move these items. 4 RP (Sept. 9, 2009) at 61.

1    Moeller ordered her back to bed and said, "We are going to take a drive up to the
     mountains." This scared Stegner because Moeller previously told her that he had
2    an ex-wife he wanted to take up to the mountains and push off a cliff. By this
     point, her "whole face was black and blue," and her "neck was black and blue
3    down to the middle of [her] chest." 4 RP (Sept. 9, 2009) at 64. Moeller then said
     he would leave Stegner alone if she performed oral sex on him. She complied,
4    hoping he would fall asleep and she could escape. Moeller fell asleep, and Stegner
     escaped through the living room window.

5
            Stegner ran to neighbor Jim Hettich's apartment. He refused to let her in,
6    but he called the apartment manager and police. Hettich testified that Stegner was
     hysterical and "her eyes were almost completely black and blue." 6 RP (Sept. 14,
7    2009) at 291. "She was sobbing, bawling, scared, [and] shaking." 6 RP (Sept. 14,
     2009) at 293. On cross-examination, Hettich denied that he told "Mr. Sizemore,
8    the apartment manager, that the day before David was arrested, [he] had seen
     [Moeller and Stegner] in an apartment having sex." 6 RP (Sept. 14, 2009) at 297.
9    Apartment manager Bill Sizemore contradicted this testimony, responding, "Yes"
     when asked, "On the day of the arrest of David Moeller, did you have a
10   conversation with James Hettich where Mr. Hettich told you that [Moeller and
     Stegner] were in James Hettich's apartment the day before David's arrest having
11   sex." 6 RP (Sept. 14, 2009) at 310.

12          Lakewood Police Officers Greg Richards and Jason Cannon responded to
     the scene. Officer Richards found Stegner hiding in the bushes outside Hettich's
13   apartment.

14          Richards testified that Stegner "appeared to be badly beaten" and "was
     very, very upset and appeared extremely scared." 4 RP (Sept. 9, 2009) at 122. She
15   told Officer Richards that Moeller "beat the shit out of me" and made her perform
     oral sex. 4 RP (Sept. 9, 2009) at 123. Cannon knocked on the couple's door, and
16   Moeller started to move the boxes behind the door to allow Officer Cannon
     inside. Officer Cannon did not want to lose sight of Moeller, so he used his
17   shoulder on the door to force entry.

18          Medical personnel transported Stegner to the hospital. Sexual assault nurse
     examiner Tara Lopez examined Stegner on November 17, 2008. Lopez observed
19   extensive bruising, and "symptoms related to the strangulation." 5 RP (Sept. 10,
     2009) at 230. Stegner told Lopez she had been slapped, choked, pushed, held
20   down against her will, tripped, and forced to engage in sexual intercourse with
     Moeller. Lopez informed the emergency room physician about the bruising
21   behind the left ear, due to concern about a basal or skull fracture. After the
     incident, Stegner moved to Florida.
22
            On November 18, 2008, the State charged Moeller with first degree rape,
23   second degree assault, and unlawful imprisonment. [footnote omitted] The State
     also charged three aggravating factors: deliberate cruelty, lack of remorse, and
24

REPORT AND RECOMMENDATION - 3

1    domestic violence. Trial was scheduled for January 13, 2009. On January 6, 2009,
     Moeller's counsel, over Moeller's objection, moved for a trial continuance
2    because the "complexity and seriousness of the case requires proper time to
     investigate and adequate[ly] prepar[e]." The court granted the motion and
3    continued the trial to April 30, 2009. On April 30, defense counsel and the
     prosecutor, over Moeller's objection, agreed to continue the trial to May 11
4    because the "assigned courtroom is in another trial" and an "out of state witness
     [Stegner] needs to be interviewed." On May 11, the morning of trial, defense
5    counsel's office requested and the court granted a one-day trial continuance
     because "defense attorney is out ill today." On May 12, [footnote omitted] the
6    court granted the State's requested trial continuance to fly the victim to
     Washington for defense interview and to accommodate defense counsel's
7    unavailability for the month of June. The trial was continued to July 1, 2009. On
     July 1, defense counsel withdrew and took an extended medical leave due to
8    serious illness. Substitute defense counsel requested a trial continuance to prepare
     for trial. The court continued the trial to August 31, 2009. On August 31, the court
9    granted a joint motion by the State and defense for a one-day continuance so the
     prosecutor could be with his family during his father's major surgery. But the
10   court denied defense counsel's request for a longer trial continuance to review
     photographs of the victim that he had not previously seen. Trial commenced on
11   September 1, 2009.

12          At trial, the State called the following witnesses: Deborah Stegner, Officer
     Greg Richards, Officer Jason Cannon, nurse Tara Lopez, and neighbor James
13   Hettich. Defense called apartment manager Bill Sizemore. Moeller did not testify.
     A jury convicted Moeller as charged on all counts. On the assault charge, the jury
14   also answered affirmatively to three special verdict forms, finding Moeller's
     conduct demonstrated an egregious lack of remorse, deliberate cruelty, and the
15   victim was a member of Moeller's family or household. . . .

16   (ECF No. 17, Exhibit 2).

17                                   PROCEDURAL HISTORY

18          Petitioner filed a direct appeal and a contemporaneous personal restraint petition (ECF

19   No. 17, Exhibits 3 and 6). The Washington State Court of Appeals consolidated the two actions

20   (ECF No. 17, Exhibit 8). The Washington State Court of Appeals subsequently affirmed the

21   conviction and denied petitioner's personal restraint petition (ECF No. 17, Exhibit 2).

22          Petitioner filed a motion for discretionary review in the Washington State Supreme Court

23   where he presented the following grounds for review:

24

> 1. The defense offered documentary evidence of bias showing that the alleged victim had a history of (a) lying about Moeller's having assaulted her and (b) making false reports to the police.
>
> (a) Did the trial court violate the confrontation clauses of the Washington Constitution article 1, section 22, and the Sixth Amendment by keeping this evidence from the jury; and
>
> (b) Did the court further violate the Sixth amendment by preventing Moeller from presenting a complete defense?
>
> 2. After medical personnel completed treatment in a hospital emergency room, the complaining witness was released to an outside forensic investigator who examined her for the sole purpose of gathering evidence for a criminal assault prosecution. Does the resulting forensic evidence bear the requisite indicia of reliability as contemplated by the medical treatment exception to the hearsay rule?
>
> 3. Is there any limit to the number of gruesome photos of an alleged victim's injuries that it is within a trial court's discretion to admit?
>
> 4. Is reversal required where the prosecutor misleads the jury as to the presumption of innocence and the meaning of reasonable doubt?

(ECF No. 17, Exhibit 11). The Washington State Supreme Court denied review without comment (ECF No. 17, Exhibit 12).

Petitioner raises six grounds for review in the federal habeas corpus petition that is before the Court:

> 1. Sixth Amendment speedy trial right
> 2. 14th Amendment due process
> 3. Sixth Amendment confrontation right
> 4. Double jeopardy pursuant to the Fifth Amendment
> 5. Sixth Amendment ineffective assistance of counsel
> 6. Cumulative trial errors resulting in violations of petitioner's Fifth and Sixth Amendment rights.

(ECF No. 7 pp. 5-15).

//

//

REPORT AND RECOMMENDATION - 5

## STANDARD OF REVIEW

Federal courts may intervene in the state judicial process only to correct wrongs of a constitutional dimension. *Engle v. Isaac*, 456 U.S. 107, 119 (1983). 28 U.S.C. § 2254 explicitly states that a federal court may entertain an application for writ of habeas corpus "only on the ground that [petitioner] is in custody in violation of the constitution or law or treaties of the United States." 28 U.S.C. § 2254(a). The Supreme Court has stated that federal habeas corpus relief does not lie for mere errors of state law. *Estelle v. McGuire*, 502 U.S. 62, 67 (1991); *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990); *Pulley v. Harris*, 465 U.S. 37, 41 (1984).

A habeas corpus petition shall not be granted with respect to any claim adjudicated on the merits in the state courts unless the adjudication either: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented to the state courts. 28 U.S.C. §2254(d). Further, a determination of a factual issue by a state court shall be presumed correct, and the applicant has the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. §2254(e)(1).

## EVIDENTIARY HEARING

Evidentiary hearings are not usually necessary in a habeas case. According to 28 U.S.C. §2254(e)(2), a hearing will only occur if a habeas applicant has failed to develop the factual basis for a claim in state court, and the applicant shows that: (A) the claim relies on (1) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court that was previously unavailable, or if there is (2) a factual predicate that could not have been previously

REPORT AND RECOMMENDATION - 6

discovered through the exercise of due diligence; and (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable fact finder would have found the applicant guilty of the underlying offense. 28 U.S.C. §2254(e)(2). Petitioner fails to meet any of these criteria.

## DISCUSSION

1. Failure to exhaust grounds for relief 1, 2, 4, 5, and 6.

Respondent concedes that petitioner exhausted his third ground for relief but argues that grounds one, two, four, five, and six are procedurally barred because they were not properly exhausted and petitioner cannot return to state court to exhaust them (ECF No. 16, p. 6).

A state prisoner seeking habeas corpus relief in federal court must exhaust available state relief prior to filing a petition in federal court. As a threshold issue the court must determine whether or not petitioner has properly presented the federal habeas claims to the state courts. 28 U.S.C. § 2254 (b)(1) states, in pertinent part:

> (b)(1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court shall not be granted unless it appears that:
> (A) the applicant has exhausted the remedies available in the courts of the state; or
> (B) (i)  there is an absence of available state corrective process; or
> (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

To exhaust state remedies, petitioner's claims must have been fairly presented to the state's highest court. *Picard v. Connor*, 404 U.S. 270, 275 (1971); *Middleton v. Cupp*, 768 F.2d 1083, 1086 (9th Cir. 1985) (petitioner "fairly presented" the claim to the state Supreme Court even though the state court did not reach the argument on the merits).

A federal habeas petitioner must provide the state courts with a fair opportunity to correct alleged violations of federal rights. *Duncan v. Henry*, 513 U.S. 364, 365 (1995) (*citing Picard*,

1 | 404 U.S. at 275). Petitioner must have exhausted the claim at every level of appeal in the state
2 | courts. *Ortberg v. Moody*, 961 F.2d 135, 138 (9th Cir. 1992). It is not enough that all the facts
3 | necessary to support the federal claim were before the state courts or that a somewhat similar
4 | state law claim was made. *Duncan*, 513 U.S. at 365-66 (*citing Picard*, 404 U.S. at 275 *and*
5 | *Anderson v. Harless*, 459 U.S. 4 (1982)). The petitioner must present the claims to the state's
6 | highest court, even if such review is discretionary. *O'Sullivan v. Boerckel*, 526 U.S. 838, 845
7 | (1999); *Larche v. Simons*, 53 F.3d 1068, 1071 (9th Cir. 1995). A petitioner must present the
8 | claims to the state's highest court based upon the same federal legal theory and factual basis as
9 | the claims are subsequently asserted in the habeas petition. *Hudson v. Rushen*, 686 F.2d 826, 830
10 | (9th Cir. 1982), *cert denied* 461 U.S. 916 (1983); *Shiers v. California*, 333 F.2d 173, 176 (9th
11 | Cir. 1964) (petitioner failed to exhaust the claim that the state trial court improperly admitted
12 | evidence because petitioner never presented such a claim to the state court). Specifically,
13 | petitioner must apprise the state court that an alleged error is not only a violation of state law, but
14 | a violation of the Constitution. *Duncan v. Henry*, 513 U.S. 364, 365-66 (1995). Vague
15 | references to broad constitutional principles such as due process, equal protection, or a fair trial
16 | are not enough. *Gray v. Netherland*, 518 U.S. 152, 162 (1996); *Gatlin v. Madding*, 189 F.3d 882,
17 | 888 (9th Cir. 1999), *cert. denied*, 528 U.S. 1087 (2000) (petitioner's statement that the state
18 | court's cumulative errors denied him a fair trial was insufficient to specifically articulate a
19 | violation of a federal constitutional guarantee); *Hiivala v. Wood*, 195 F.3d 1098, 1106 (9th Cir.
20 | 1999). Petitioner must include reference to a specific federal constitutional guarantee, as well as
21 | a statement of the facts that entitle petitioner to relief. *Gray v. Netherland*, 518 U.S. at 162-163.
22 |       Petitioner failed to exhaust his first, second, fourth, fifth, and sixth ground for relief
23 | because he did not present them to the Washington State Supreme Court based on a federal legal
24 |

theory (ECF No. 17, Exhibit 11). When petitioner filed his motion for discretionary review in the Washington State Supreme Court he either did not present these grounds for relief at all, or he presented them as state law claims (ECF 17, Exhibit 11). The Court concludes that grounds for relief one, two, four, five, and six were not properly exhausted.

2.  Procedural bar.

Petitioner has completed one full round of post conviction challenges, he has completed the direct appeal avenue and the collateral challenge avenue (ECF No. 17, Exhibits 3 and 6). Under Washington law he may not file further state challenges. *See*, RCW 10.73.140. Petitioner is procedurally barred from returning to state court to exhaust grounds for relief one, two, four, five, and six.

"In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless petitioner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

To show cause in federal court, petitioner must show that some objective factor, external to the defense, prevented petitioner from complying with state procedural rules relating to the presentation of petitioner's claims. *McCleskey v. Zant*, 499 U.S. 467, 493-94 (1991) (*citing Murray v. Carrier*, 477 U.S. 478, 488 (1986). Examples which may satisfy "cause" include "interference by officials" that makes compliance with state procedural rules impracticable, "a showing that the factual or legal basis for a claim was not reasonably available to counsel", or "ineffective assistance of counsel." *McCleskey*, 499 U.S. at 494 (*citing Murray*, 477 U.S. at 488).

1  Petitioner in this case cannot show cause and prejudice. Petitioner simply did not raise
2  the grounds for relief as federal issues when he filed his motion for discretionary review (ECF
3  No. 17, Exhibit 11).
4  A petitioner can show "actual innocence" if the "evidence of innocence [is] so strong that
5  a court cannot have confidence in the outcome of the trial." *See*, *Schlup v Delo*, 513 U.S. 298,
6  316 (1995). "The meaning of actual innocence . . . does not merely require a showing that a
7  reasonable doubt exists in the light of the new evidence, but rather that no reasonable juror
8  would have found the defendant guilty." *Schlup*, 513 U.S. 298, 329 (1995). Petitioner has
9  presented no new evidence to show innocence. Petitioner did not file any response to
10 respondent's answer. The Court concludes that grounds for relief one, two, four, five, and six,
11 are procedurally defaulted and the Court recommends these ground for relief be dismissed as
12 procedurally defaulted.
13  3.  Admission of evidence and the Confrontation Clause.
14  Petitioner argues that the trial court erred in refusing to admit a letter allegedly written by
15 the victim which showed that she had previously falsely accused petitioner of abusing her.
16 Petitioner also alleges that the victim had injured herself to control petitioner and keep him from
17 leaving her.
18  The Washington State Court of Appeals addressed petitioner's arguments and stated:

> Moeller next argues the court violated the Sixth Amendment confrontation clause by erroneously excluding clear evidence of bias against the State's key witness-Deborah Stegner. The State responds that the court only excluded irrelevant evidence.
> "A defendant has a right to confront the witness against him with bias evidence so long as the evidence is at least minimally relevant." *State v. Fisher*, 165 Wn.2d 727, 752, 202 P.3d 937 (2009). "We uphold the trial court's ruling on the scope of cross-examination absent a finding of manifest abuse of discretion." *Fisher*, 165 Wn.2d at 752.

> Moeller contends the court improperly excluded two exhibits offered to show Stegner's bias: (1) an October 2, 2008 letter written by Stegner to a city prosecutor prior to the offenses here that she may have falsely accused Moeller of assault while under the influence of an alcohol blackout and (2) a police report stating that Stegner had cut her wrists after calling her ex-boyfriend. We decline to review Moeller's assertions about the police report because he neither included it in his assignment of error nor clearly disclosed it in the associated issue. RAP 10.3(a)(4); RAP 10.3(g). And inadequate briefing prevents meaningful review of the court's ruling on the police report. RAP 10.3(a)(6); *State v. Wheaton*, 121 Wn.2d 347, 365, 850 P.2d 507 (1993).
>
> And contrary to Moeller's contention on appeal, the record shows that defense counsel never sought to admit exhibit 159, Stegner's October 2, 2008 letter.
>
>> COURT: ...I don't think you can use those documents [letter and police report]. You can ask her, I think about whether or not she made prior false accusations about him abusing her. I think you can ask her that.
>>
>> [DEFENSE COUNSEL]: I can have her refer or look at the document.
>>
>> COURT: I don't know about that. I suppose if it refreshes her recollection, that could be used.
>>
>> [DEFENSE COUNSEL]: I don't intend to attempt to admit it.
>>
>> COURT: Well, that wasn't so clear to me.
>>
>> 5 RP (Sept. 10, 2009) at 203-04.
>
> The record further indicates that following the court's ruling, defense counsel cross-examined Stegner about the letter, false allegations she made of past physical abuse, and her heavy alcohol use.
>
> In *Fisher*, our Supreme Court rejected defendant's argument that the "confrontation right includes the right to put specific facts before the jury." *Fisher*, 165 Wn.2d at 752-53. The *Fisher* court reasoned:
>
>> Although the trial court excluded evidence of the financial details of the divorce, it did allow counsel to elicit testimony from Ward about the prolonged nature of the divorce and whether she harbored ill will toward Fisher. Fisher's confrontation rights were not violated since the jury was apprised of the specific reasons why Ward's testimony might be biased.
>
> *Fisher*, Wn.2d at 753. Because Moeller was permitted to inquire into reasons why Stegner's testimony might be biased and because defense counsel never offered Stegner's letter into evidence, Moeller's confrontation clause challenge fails.

(ECF No. 17, Exhibit 2, pp. 14-15).

The ruling of the Washington State Court of Appeals on this issue does not violate clearly established federal law. The record shows that the trial court gave petitioner the opportunity to

cross-examine the witness regarding prior conduct that might shows bias. Defense counsel took advantage of that opportunity (ECF No. 17, Exhibit 2, p. 15). The United States Supreme Court "has never held that the Confrontation Clause entitles a criminal defendant to introduce extrinsic evidence for impeachment purposes." *Nevada v. Jackson*, _ U.S. _, 133 S. Ct. 1990, 1994 (2013) (defendant was not allowed to admit extrinsic evidence or prior accusations). This recent Supreme Court decision is controlling in this case. Petitioner cannot show that the decision of the Washington State Court of Appeals violates clearly established federal law, as determined by the Supreme Court. Petitioner cannot obtain relief on his claim. Accordingly, the Court recommends denial of this petition.

## CERTIFICATE OF APPEALABILITY

Petitioner seeking post-conviction relief under 28 U.S.C.§ 2254 may appeal a district court's dismissal of the federal habeas petition only after obtaining a certificate of appealability (COA) from a district or circuit judge.  A certificate of appealability may issue only if petitioner has made "a substantial showing of the denial of a constitutional right." *See* 28 U.S.C. § 2253(c)(2).  Petitioner satisfies this standard "by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (*citing Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).  Pursuant to this standard, this Court concludes that petitioner is not entitled to a certificate of appealability with respect to this petition.

Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have fourteen (14) days from service of this Report to file written objections. *See also* Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of de novo

1  review by the district judge. *See* 28 U.S.C. § 636(b)(1)(C). Accommodating the time limit

2  imposed by Fed. R. Civ. P. 72(b), the clerk is directed to set the matter for consideration on

3  September 20, 2013, as noted in the caption.

4      Dated this 27th day of August, 2013.

6  J. Richard Creatura
   United States Magistrate Judge